# United States Court of Appeals
# For the Fifth Circuit

---

No. 24-60227

EAST FORK ENTERPRISES, INCORPORATED; EPIC PAINT COMPANY,

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents*

---

consolidated with No. 24-60256

---

EAST FORK ENTERPRISES, INCORPORATED; EPIC PAINT COMPANY; SIERRA CLUB,

*Petitioners*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondents.*

---

## PETITIONERS' OPPOSITION TO MOTION TO INTERVENE BY LABOR COUNCIL FOR LATIN AMERICAN ADVANCEMENT

The Labor Council for Latin American Advancement ("Labor Council") filed an untimely motion to intervene, and then did not show an interest that warrants its participation as a party defending a rule that respondent Environmental Protection Agency ("EPA") will surely itself be defending vigorously. There is no apparent difference between what the Labor Council wants to say and what EPA will argue. Intervention from the Labor Council—if it were even permissible on an untimely motion—would simply enlarge the briefing before the Court to repeat the arguments it will be hearing already.

## BACKGROUND

On May 8, 2024, EPA published its final rule "to address the unreasonable risk of injury to health presented by methylene chloride under its conditions of use." 89 Fed. Reg. 39,254 (May 8, 2024) ("Rule" or "Final Rule"). The Rule, issued under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. § 2601 *et seq.*, applies only to those who manufacture, process, distribute in commerce, use, or dispose of methylene chloride or products containing methylene chloride. *Id.* at 39,254. On that same day, petitioners filed for review of the Rule in this Court. Doc. 1. Petitioners filed a second,

protective petition on May 22, 2024, two weeks after the publication of the rule.[1] (The Court stamped the date May 24 on the petition; but the docket shows, correctly, that the petition was received at the Court on May 22.)

On June 12, 2024, the Judicial Panel on Multidistrict Litigation transferred to this Court another petition that the Sierra Club had filed against the Rule. Doc. 13. That order also consolidated the Sierra Club's petition into this case.

The Labor Council filed its motion to intervene, Doc. 33-1 ("Motion") on June 24, 2024.

On July 2, 2024, the Court consolidated those case into No. 24-60227, the May 8 petition. Doc. 30.

## ARGUMENT

The Labor Council's Motion must be denied because it fails to meet the requirements of Fed. R. App. P. 15(d) or Fed. R. Civ. P. 24. "Rule 15(d) of the

---

[1] An EPA regulation states that a TSCA is deemed "issued" two weeks after publication in the Federal Register. 40 C.F.R. § 23.5. But TSCA does not limit judicial review to petitions filed after the issuance or promulgation of a rule. 15 U.S.C. § 2618(a)(1)(A).

Federal Rules of Appellate Procedure governs interventions in administrative appeals." *Texas* v. *U.S. Dep't of Energy*, 754 F.2d 550, 551 (5th Cir. 1985). "That rule provides no standard for resolving intervention questions, but the Court has identified two considerations: first, the statutory design of the act and second, the policies underlying intervention in the trial courts pursuant to Fed. R. Civ. P. 24." *Id.* Here, the applicable standards dictate that the Court must deny the motion for intervention as of right and for permissive intervention.

## I. THE LABOR COUNCIL DOES NOT SATISFY THE REQUIREMENTS FOR INTERVENTION AS OF RIGHT.

To intervene of right, an applicant must meet four requirements: "(1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit." 754 F.2d at 552. Here, the Labor Council

cannot meet the requirements to show (1) it timely filed a motion to intervene; (2) it has a legally protectable interest such that its ability to protect would be impaired or impeded; or (3) that its interests are not adequately represented by existing parties to the suit.

### A. The Labor Council Cannot Intervene Because Its Motion is Untimely.

According to Rule 15(d), a motion to intervene must "be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d). That date was June 7, 2024, starting from the initial petition in this case, or June 21, 2024, counting from the second petition. The Labor Council did not meet either deadline.

The Labor Council appears to think Local Rule 15.5 modifies Rule 15(d) by stating that a motion to intervene should be filed "promptly after the petition for review" of the agency proceeding is filed, but "not later than 14 days prior to the due date of the brief of the party supported by the intervenor." Motion at 9. Nothing in Local Rule 15.5 suggests the Court meant to modify the 30-day deadline of Rule 15(d). To the contrary, the Court has

repeatedly said that motions to intervene must be filed within 30 days of the petition. For example, *City of Arlington, Texas* v. *FCC*, explained that an intervenor cannot raise matters "outside the scope of the other party's petition," because "motions to intervene must be filed within 30 days after filing of the petition for review," which would enable an intervenor to present issues for 90 days after the agency's order. 668 F.3d 229, 239 (5th Cir. 2012). The *City of Arlington* panel would have been surprised to learn that motions to intervene actually do not have any real time limit, so long as they are filed shortly before the briefing deadline for the party they support. *Brazoria County, Texas* v. *EEOC*, 391 F.3d 685 (5th Cir. 2004), said the same thing. So did *United Gas Pipe Line Co.* v. *FERC*, 824 F.2d 417 (5th Cir. 1987). If Local Rule 15.5 was meant to change the precedent running over decades, the rule would surely give some sign of that intent. And, as noted, *City of Arlington* evidently did not realize that was the meaning.

Indeed, Local Rule 15.5 essentially reemphasizes the importance of adhering to the 30-day time limit. The rule requires a motion to be filed "promptly." The Labor Council appears to think "promptly" means any time

earlier than 14 days before the briefing due date of the party supported. That cannot be the meaning, because then the requirement to file "promptly" is superfluous. That requirement must mandate some other standard of promptness; and the only standard available is the 30-day deadline of Rule 15(d). The reference to filing no more than 14 days before the briefing deadline of the party supported is best understood as a further restriction. That is what the text suggests when it says "but not later than." The "but" indicates that the following material is a distinction from the "promptly" requirement, not an elaboration of it.[2]

The idea that a motion to intervene could be filed up to 14 days before EPA's briefing deadline is startling. Petitioners would have to prepare their case, and file their opening brief, without even knowing what intervenors they might face on EPA's side. It seems highly unlikely that the Court meant Local Rule 15.5 to have that prejudicial effect.

---

[2] The 14-day rule could become important if, for example, an agency filed the record soon after receiving a petition; the petitioner's opening brief would be due 40 days later, yet the ordinary 30-day intervention rule would have the intervenor's motion due only shortly before that.

Thus, Local Rule 15.5 aligns with Rule 15(d), by stating that motions to intervene must be filed "promptly," which means within 30 days of the petition, just as *City of Arlington* said. Not 47 days or 33 days, as for the Labor Council's motion. The Labor Council's unjustified delay alone warrants denial of its motion to intervene.

## B. The Labor Council Cannot Show Any Interest Relating to this Action such that Disposition of this Action Will Impair or Impede Its Ability to Protect Its Interest.

The Labor Council does not have an interest relating to this action. "[I]ntervention . . . requires a 'direct, substantial, legally protectable interest in the proceedings.'" *Diaz* v. *S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) (quoting *Hobson* v. *Hobson*, 44 F.R.D. 18, 24 (D.D.C. 1968)). The Labor Council does not suggest that any product from either petitioner has affected any of the Labor Council's members. The Labor Council does not even appear to know what products the petitioners make, nor how the Rule affects its members. So none of the Labor Council's members—from which it claims to derive its interest—has shown any stake in whether either of the petitioners is or is not allowed to produce or sell products containing methylene chloride.

The cases that the Labor Council cites regarding a legally protectable interest are quite different from this one. In *Students for Fair Admissions, Inc.* v. *University of Texas at Austin*, student associations claimed an interest on behalf of students who would be harmed by elimination of the University of Texas's race-conscious admissions policy. 338 F.R.D. 364, 369 (W.D. Tex. 2021). That case cited *Wal-Mart Stores, Inc.* v. *Texas Alcoholic Beverage Commission*, in which a trade group that was allowed to intervene because the plaintiff alleged the trade group itself was the main—indeed, exclusive—beneficiary of the regulation being challenged. 834 F.3d 562, 568–69 (5th Cir. 2016).

This Court's precedents are clear that to justify intervention, a movant must have more than a generalized interest; it must, for example, be the intended recipient of the provided benefits. *E.g.*, *Texas* v. *United States*, 805 F.3d 653, 660 (5th Cir. 2015).

But the Labor Council's members (from which it derives its only interest) have no more than a generalized interest in a diminishing use of methylene chloride. That EPA has previously recognized that Hispanic

workers are at risk of methylene chloride exposure does not mean that they are the intended beneficiary of the Final Rule. The same withdrawn rule that the Labor Council relies on to show that Hispanic workers are at risk also states that "all consumers and workers using paint and coating removal products containing methylene chloride"—not just Hispanic workers— "would benefit from risk reduction." 82 Fed. Reg. 7,464, 7,476 (Jan. 19, 2017), *withdrawn*, 86 Fed. Reg. 3,932 (Jan. 15, 2021). Neither does TSCA's general risk evaluation process, *see* 15 U.S.C. § 2605(b)(4)(A), create more than a general interest in the litigation. Nor does the definition of "potentially exposed or susceptible subpopulation" in 15 U.S.C. § 2602(12). Such subpopulations could include infants, children, pregnant women, workers, or the elderly. *Id.* Under the Labor Council's reasoning, all of these subpopulations could then seek to intervene in a petition for review claiming a protectable interest in the matter.

That the Labor Council's members may be among a "susceptible subpopulation" is, really, no more than a generalized interest. The Eleventh Circuit held that industry members facing potential permit modifications if EPA revised a listing of protected waters had only a "generalized grievance"

not entitling them to intervene. *ManaSota-88, Inc.* v. *Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990). The Ninth Circuit held that an organization's members interested in water quality in their region had no "legally protectible interest" at stake in litigation over the release of water from a government-controlled dam. *Westlands Water District* v. *United States*, 700 F.2d 561, 563 (9th Cir. 1983). The Ninth Circuit similarly held that companies buying significant amounts of electricity from a particular utility nonetheless had only an "undifferentiated, generalized interest" in a case demanding approval of its rate increase. *S. Cal. Edison Co.* v. *Lynch*, 307 F.3d 794, 803 (9th Cir. 2002). The interests of Hispanic workers, the asserted membership of the Labor Council, in this case are just as generalized.

This is especially so given that the Labor Council is not regulated by the Rule. 89 Fed. Reg. 39,254; *see also Texas* v. *United States*, 805 F.3d at 658 (citing a Sixth Circuit case that denied intervention when "the organization had only an ideological interest in the litigation, and the lawsuit [would] not involve the regulation of the organization's conduct in any respect"). The Rule applies only to those to "manufacture ... process, distribute in commerce, use, or

dispose of methylene chloride or products containing methylene chloride."

89 Fed. Reg. 39,254. The Labor Council does not contend the Rule applies to it

or to its members.

## C. The Labor Council's Interests, Such as They Are, Will Be Adequately Represented by EPA.

A presumption applies when "the would-be intervenor has the same

ultimate objective as a party to the lawsuit," such that the existing party will

adequately protect the would-be intervenor's interests. *Texas* v. *United States*,

805 F.3d at 661–62 (quoting *Edwards* v. *Houston*, 78 F.3d 983, 1005 (5th Cir.

1996)). By its own admission, the Labor Council "does not seek any relief

beyond that sought by Respondent EPA." Motion at 11 n.3. Therefore, the

"same ultimate objective" presumption applies here.

When the "same ultimate objective" presumption applies, "the

applicant for intervention must show adversity of interest, collusion, or

nonfeasance on the part of the existing party to overcome the presumption."

805 F.3d at 661–62. "[T]o show adversity of interest, an intervenor must

demonstrate that its interests diverge from the putative representative's

interests in a manner germane to the case." *Id.* at 662. This Court has also recognized that, "[s]imilarly, if the government-representative presumption applies," the applicant must show "its interest is in fact different from that of the [governmental entity] and the interest will not be represented by [it]." *Id.* (alterations in original).[3]

In a case challenging a Texas affirmative action admissions policy, while considering the similar government-representative presumption, this Court concluded that applicants who sought to intervene in support of the policy had not overcome the presumption, even though: (1) the state had a long history of discrimination; (2) broader interests than applicant-intervenors; and (3) the applicants claimed to be in a "better position to present evidence of recent discrimination." *Hopwood* v. *Texas*, 21 F.3d 603, 605 (5th Cir. 1994). Despite those assertions, the Court concluded the applicants

_____

[3] The Labor Council points out that the different presumption of adequate representation when a "sovereign interest" is a party does not apply. Motion at 14 n.4 (citing *Entergy Gulf States La., LLC* v. *EPA*, 817 F.3d 198, 203 n.2 (5th Cir. 2016). As *Entergy* explained, the "same ultimate objective" presumption is a second, different presumption that certainly does apply for a government agency as party. 817 F.3d at 203.

had "not demonstrated that the State [would] not strongly defend its affirmative action program" or that applicants had "a separate defense of the affirmative action plan that the State ha[d] failed to assert." *Id.* at 606. Consequently, they failed to overcome the presumption and show "a separate interest that the State [would] not adequately represent," and intervention was not appropriate. *Id.*

Here, similarly, the Labor Council cannot rebut the presumption of adequate representation because its interests are fully aligned with EPA's interests. The Labor Council identifies points on which it has disagreed with EPA on matters relating to methylene chloride. Motion at 14–15. But the fact that EPA's Rule gave certain exceptions that were broader than the Labor Council wanted says nothing about whether EPA will fully and vigorously defend the Rule as it stands, and the Labor Council does not claim to want anything more than that. Apparently, the Labor Council worries that in the future under a different President, EPA might not defend the Rule vigorously. Motion at 15–16. That is entirely speculative; the Labor Council provides no reason to think any incoming President would not oversee full and vigorous

defense of what EPA has done. Finally, the Labor Council also says EPA has "more extensive interests," given that it must consider the overall "environmental, economic, and social impact" of its rules. *Id.* That cannot justify intervention, because "[t]he general notion that the [government] represents 'broader' interests at some abstract level is not enough." *Daggett* v. *Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 112 (1st Cir. 1999). In short, just like the movants in *Hopwood*, the Labor Council has not "shown that [it] ha[s] a separate defense" that EPA will not assert, 21 F.3d at 606, and consequently has not shown a reason that the Labor Council's participation is needed.

The Labor Council relies heavily on *Brumfield* v. *Dodd*, in which parents wanting to preserve school vouchers were allowed to intervene alongside a state education department. 749 F.3d 339 (5th Cir. 2014). But in reaching that conclusion, the Court pointed out that "a private group does not always satisfy this prong just because a governmental entity is on the same side of an issue." *Id.* at 346. That observation confirms, as noted above, that a generalized fear the agency might change its mind, given its broader societal concerns, is not

enough to show inadequate representation. The *Brumfield* movants clearly identified interests of the state that differed from their own. *Id.* And they had already clearly "stak[ed] out a position significantly different from that of the state" regarding jurisdiction. *Id.* The Labor Council, so far as appears in its Motion, has the same views as EPA on the matters actually disputed in the litigation (notwithstanding their past disagreements about exceptions that EPA granted that are not at issue in this case).

### D.   The Labor Council is Improperly Using the Same Counsel as Petitioner Sierra Club.

These consolidated cases include not only petitioners, but also the Sierra Club. The Labor Council and the Sierra Club are represented, in this case, by the same law firm and the same attorneys from that firm. Ordinarily, when a party and a proposed intervenor on the same side have the same lawyers, that circumstance shows the party provides "adequate representation" for the proposed intervenor's interests. *In re Texas Extrusion Corp.*, 68 B.R. 712, 722 (N.D. Tex. 1986); *Hicks* v. *Crown Zellerbach Corp.*, 49 F.R.D. 184, 192–93 (E.D. La. 1967), *supplemented on other grounds*, 321 F. Supp. 1241 (E.D.

La. 1971) (considering adequacy of representation in an untimely motion to intervene and stating "adequacy of representation is unaffected where the same counsel is involved").

But this case presents an even stranger situation, because the Labor Council would formally be appearing on the other side of the case from the Sierra Club. Asserting that the Rule should be upheld, as the Labor Council would have to do as intervenors on the side of EPA, would put its counsel in the untenable position of arguing in the Sierra Club petition that the Rule should be overturned while taking the opposite position in the same case for the Labor Council. This would present an irreconcilable conflict, not to mention a breach of duty of zealous representation to one or the other of counsel's clients.

If instead, the Sierra Club and the Labor Council have agreed to accept this strange two-sided representation by their shared attorneys—then the Sierra Club through its lawyers is attempting an unusual scheme to obtain an additional brief beyond what the rules ordinarily permit. At a minimum, if the Court effectively permits the Sierra Club, through its lawyers, to file an

additional substantial brief as an intervenor supporting EPA, it should allow

petitioners a correspondingly larger reply brief to address those issues.

## II.    THE LABOR COUNCIL DOES NOT SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION.

The Court must similarly deny the Labor Council's motion for

permissive intervention.  In the Court's discretion it is proper to deny

permissive intervention where the proposed intervenors' interests are

already adequately represented.  *Ingebretsen in re Ingebretsen* v. *Jackson Pub.*

*School Dist.*, 88 F.3d 274, 281 (5th Cir. 1996).  As noted above, the Labor Council's

interests, if any, are more than adequately represented.  First, it shares the

same desired outcome as EPA, and has offered nothing but speculation to

support that EPA's interests diverge from its own.  Second, the Labor Council

has the exact same attorneys as the Sierra Club, another petitioner in this

consolidated action, which further establishes that adequate representation

already exists.

Denial of permissive intervention is also appropriate where the

proposed intervenors "bring no new issues to th[e] action."  *Id.*  Where the

intervention offers nothing helpful but would only delay the action, the Court should deny the motion. *See id.*; *see also Johnson* v. *City of Dallas, Tex.*, 155 F.R.D. 581, 586 (N.D. Tex. 1994) (denying permissive intervention where "the intrusion of Movants into this litigation would do little more than needlessly increase costs and delay disposition of the case"). Here, the Labor Council has not suggested any new issues they plan to bring that EPA will not address.

The Labor Council suggests it deserves permissive intervention because its defense has issues in common with EPA's. Motion at 16–17. The issues are not just common; they are identical, so far as can be gleaned from the Motion. This Court has said that the two most prominent factors in deciding whether to accept a permissive intervention are "whether the intervenors are adequately represented by other parties and whether they are likely to contribute significantly to the development of the underlying factual issues." *League of United Latin Am. Citizens, Council No. 4434* v. *Clements*, 884 F.2d 185, 189 (5th Cir. 1989). To support its plea for permissive intervention, the Labor Council has nothing further to say about adequacy of representation, and it offers no argument that it has anything to contribute about the underlying

factual issues (which involve the effects of methylene chloride and the economic consequences of restricting it). Indeed, the Labor Council does not offer anything new at all; it promises nothing more than additional briefing.

Although the Labor Council does not justify intervention, it could of course seek to present its views as *amicus curiae*. This Court has repeatedly observed that "when he presents no new questions, a third party can contribute usually most effectively and always most expeditiously by a brief amicus curiae and not by intervention." *Texas* v. *U.S. Dep't of Energy*, 754 F.2d at 553 (quoting *Bush* v. *Viterna*, 740 F.2d 350, 359 (5th Cir. 1984)). While petitioners maintain that the Labor Council cannot properly intervene, they would not object to a timely-filed (and otherwise compliant) *amicus curiae* brief from the Labor Council.

## CONCLUSION

For these reasons stated, the Court should deny the Labor Council's motion to intervene.

/s *Keith Bradley*

Keith Bradley
717 Seventeenth Street, Ste. 1825
Denver, CO 80202
Tel: 303-830-1776
Fax: 303-894-9239
keith.bradley@squirepb.com

W. Caffey Norman
Allen Kacenjar
Morgan Alexis Miller
2550 M Street, NW
Washington, DC 20037
Tel: 202-457-5270
Fax: 202-457-6315

SQUIRE PATTON BOGGS (US) LLP

*Counsel for Petitioners*

July 5, 2024

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App.P. 27(d)(2)(A)–(B) because it contains 3,679 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f), and it does not exceed 20 pages.

This motion also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office 365 in Vollkorn 14-point font.

/s *Keith Bradley*
Keith Bradley

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2024, I electronically filed the foregoing Response to Motion to Intervene with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s *Keith Bradley*
Keith Bradley