IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 24-60227

EAST FORK ENTERPRISES, INC.; EPIC PAINT COMPANY;

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,

*Respondents*.

<u>consolidated with</u>

No. 24-60256

EAST FORK ENTERPRISES, INC.; EPIC PAINT COMPANY; SIERRA CLUB;

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, Administrator, United States Environmental Protection Agency,

*Respondents*.

**REPLY IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE BY THE AMERICAN FEDERATION OF LABOR – CONGRESS OF INDUSTRIAL ORGANIZATIONS (AFL-CIO)**

Randy S. Rabinowitz
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202-256-4080
randy@oshlaw.org

Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
301-785-3204
[victoriabor87@gmail.com](mailto:victoriabor87@gmail.com)

Matthew Ginsburg
General Counsel
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Attorneys for AFL-CIO*

## INTRODUCTION

The American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") is a federation of 60 labor unions that together represent 12.5 million workers across this country. In support of its' motion for leave to intervene in support of Respondents, the AFL-CIO explained that tens of thousands of workers who belong to its affiliated unions are, in the present day, exposed to levels of methylene chloride that the Environmental Protection Agency ("EPA") has determined expose to them to unreasonable risks of cancer and liver toxicity. These workers are employed in a variety of industries across our nation, ranging from construction sites to rubber and plastics manufacturing plants to factories building lithium ion battery separators for the electric vehicle industry. *See* ECF No. 37, Declaration of Rebecca Reindel ("Reindel Decl.") ¶¶ 11-14. And they handle methylene chloride under a variety of conditions of use directly regulated by EPA's Final Rule, including paint and coating removal, domestic manufacturing, processing as a reactant, and use as a processing aid. *Id.*

For these workers represented by AFL-CIO-affiliated unions, the Rule will have a direct, particularized, and significant impact on their health and well-being. Union members in the building trades will see their occupational exposures reduced to *zero* because the Rule bans the use of this toxic chemical for paint and coating

removal entirely. Their counterparts in the industrial sector will also benefit from significantly reduced exposures required by the Rule's Workplace Chemical Protection Program. And, because health and safety issues are a mandatory subject of collective bargaining, their unions will benefit by taking this issue off the bargaining table.

Despite these compelling factors, Industry Petitioners contend that America's leading federation of labor unions has "no more than a generalized interest in a diminishing use of methylene chloride," even going so far as to suggest that the AFL-CIO's interests are merely "ideological." ECF No. 42, Opposition to Motion to Intervene ("Opp.") at 16-17. This is nothing short of absurd.

Moreover, Industry Petitioners' facial challenge to the Rule poses a direct threat to the health and safety of AFL-CIO affiliates' members, such that the disposition of the action would "impair or impede [the AFL-CIO's] ability to protect [its] interest." If any of the Rule's provisions are vacated or loosened, members of AFL-CIO-affiliated unions will continue to be exposed to methylene chloride at the levels currently permitted by the very same Occupational Safety and Health Administration ("OSHA") standards that EPA deemed to be inadequate to prevent an unreasonable risk to human health. Union members will fall ill; some may die. And the unions representing them will have to use their bargaining power

to bargain for health and safety protections that would otherwise be mandated by law.

The Court should grant the Motion to Intervene and permit the voice of America's workers to be represented in a case that plainly implicates the health and safety of its members.

## ARGUMENT

### I. The Motion to Intervene Presents No Timeliness Issues

#### A. Industry Petitioners' Timeliness Arguments Have Been Rendered Moot by the Filing of a Separate Petition in the D.C. Circuit

While Industry Petitioners timeliness challenges to the AFL-CIO's motion are meritless, *see infra* Sections I.B & I.C, the Court need not even consider these arguments because they have been rendered moot by an intervening event—the American Chemistry Council's filing of a petition challenging the Rule in the D.C. Circuit. *See American Chemistry Council v. EPA*, No. 24-1256 (D.C. Cir. July 19, 2024) ("ACC Petition"). The AFL-CIO has a clear adversity of interest with the ACC Petition.[1]

---

[1] The ACC is an association that "represents more than 190 companies engaged in the business of chemistry." "*See* American Chemistry Council, "About ACC," https://www.americanchemistry.com/about-acc (last accessed July 24, 2024). In comments filed in response to the Notice of Proposed Rulemaking ("NPRM") that led to the Rule challenged here, ACC argued, *inter alia*, (1) that various conditions

The order of the Judicial Panel on Multidistrict Litigation selecting this Court to hear all challenges to EPA's Final Rule makes it certain that the ACC Petition will be transferred to this Court and consolidated with the pending petitions for review. *See* 28 U.S.C. § 2112(a)(3) (describing process that led to petitions for review being consolidated before this court and stating that "the agency . . . concerned shall file the record in the court of appeals designated"); 28 U.S.C. § 2112(a)(5) (requiring all other courts to "transfer . . . proceedings to the court in which the record is so filed.").

Accordingly, regardless of its arguments concerning Local Rule 15.5, the AFL-CIO could file the same motion to intervene in the D.C. Circuit (or before this Court, should the D.C. Circuit promptly effectuate the transfer) at any time before August 19, 2024. Such a motion would unquestionably be timely within the meaning of Federal Rule of Appellate Procedure 15(d).

Given the ACC Petition's inevitable transfer, judicial efficiency requires the

---

of use posed no unreasonable risk to health and safety and should be subject to no additional regulation; (2) that EPA should have presumed, in measuring exposures, that contrary to OSHA practice, workers are constantly using Personal Protective Equipment ("PPE") ; and (3) that EPA insufficiently substantiated the exposure limits that it established. *See* ACC Comments in Response to Environmental Protection Agency, NPRM, "Methylene Chloride; Regulation under the Toxic Substances Control Act (TSCA)," filed July 3, 2023, *available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0281.

4

Court to grant the pending motion rather than insist that the AFL-CIO file a second motion to intervene with respect to the ACC Petition.

> B. Industry Petitioners are Not Prejudiced By the Timing of the Motion to Intervene

One key word is nowhere to be found Industry Petitioners' response to the AFL-CIO's motion—prejudice. Industry Petitioners do not contest that, under Federal Rule of Appellate Procedure 26(b), the Court has full discretion to grant a motion to intervene out of time for good cause shown. *See, e.g., United Gas Pipe Line Co. v. FERC*, 824 F.2d 417, 436 n.22 (5th Cir. 1987) ("[O]ur practice has been at times to grant motions for leave to intervene out of time."). And they do not argue that they would be prejudiced in any way by a motion to intervene that was submitted over two weeks before the agency is due to file the administrative record on appeal, when no briefing schedule has been set, and no meaningful activity has occurred in the case.

To be sure, the AFL-CIO does not assert any right to disregard filing deadlines established by court rules. Instead, the AFL-CIO believes that its motion *is* timely on a proper reading of Local Rule 15.5, which states in no uncertain terms that a motion to intervene may be filed "not later than 14 days prior to the due date of the brief of the party supported by the intervenor," *i.e.* at times exceeding

5

Federal Rule of Appellate Procedure 15(d)'s shorter 30-day deadline. Even if the Court t disagrees with this interpretation, the AFL-CIO relied upon the plain meaning of the Local Rule in good faith and thus good cause exists for permitting the filing of its motion out of time.

C. <u>The Motion to Intervene is Timely</u>

Lastly, Industry Petitioners' reading of the relationship between Federal Rule of Appellate Procedure 15(d) and Local Rule 15.5 is untenable. In their telling, this Court promulgated a Local Rule that "essentially reemphasizes the importance of adherence to the 30-day time limit." Opp. at 7. According to Industry Petitioners, the Court did so: (1) without referencing the 30-day time limit; and (2) while expressly setting forth a different time limit that, in virtually every conceivable scenario, would occur well after the 30 days elapsed. And, they speculate, the Court promulgated this Local Rule so that, in the event that an agency files the administrative record *in the first three days* after receiving a petition for review, any potential intervenor would be required to file a motion one, two, or three days earlier than Rule 15(d)'s 30-day limit would require.

This analysis is risible. Rather than contort the Local Rule's meaning to conclude that this Court sought to solve the non-existent problem of immediate agency filing of the record on appeal by opaque means that contradict the Federal

6

Rules of Appellate Procedure,[2] the AFL-CIO reads the rule to mean what it says: a motion to intervene is timely if "prompt" and filed "no later than 14 days before" the briefing deadline for the party supported.

The AFL-CIO's motion, filed before the agency filed the administrative record or a briefing schedule has been set, is clearly "prompt." While Industry Petitioners contend that Local Rule 15.5 could lead to a scenario where they would "file their opening brief without knowing what intervenors they might face on EPA's side," Opp. at 8, the Court need not address this abstract hypothetical. A party that lays in wait, without any cause, for a petitioner to file its brief before filing a surprise motion to intervene may very well not have acted "promptly," even if it complied with the 14-day requirement. No such issue is presented here, where nothing of substance has occurred in the case and Industry Petitioners suffered no

---

[2] As discussed in the Motion to Intervene, Federal Rule of Appellate Procedure 47 requires that a court's local rules "must be consistent with" the Federal Rules. While a court's local rule may extend any deadline enumerated in the Federal Rules pursuant to Rule 26(b), no Federal Rule authorizes a court to *shorten* a deadline expressly enumerated therein. Industry Petitioners' reading of the Local Rule expressly clashes with Federal Rule 15(d), and thus violates Rule 47.

In their Opposition, Industry Petitioners mention several Local Rules that establish deadlines for certain filings for which no express deadline is established in the Federal Rules. Opp. at 8-9. Such rules are permissible. Rather than shortening a deadline specifically enumerated in a Federal Rule, they fill gaps where the Federal Rules are silent and are in no way inconsistent within the meaning of Federal Rule 47.

prejudice.

## II. The AFL-CIO Has a Compelling Interest in this Proceeding that Would Be Impaired Absent Intervention

As described *supra* at 1, tens of thousands of members of AFL-CIO-affiliated unions currently use methylene chloride under a variety of conditions of use regulated by the Rule, are exposed to concentrations of the toxic chemical that EPA has found pose an unreasonable risk to their health and would benefit from the Rule's protective measures. Exposure to toxic chemicals constitutes particularized harm. *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000).

This factor alone is more than enough to demonstrate the AFL-CIO's interest in this proceeding. Indeed, less than two months ago, this Court granted AFL-CIO affiliate United Steelworkers' ("USW") motion to intervene to support respondents in an analogous TSCA proceeding concerning a risk management rule regulating chrysotile asbestos. *See Texas Chemistry Council v. EPA*, No. 24-60193, ECF No. 61 (5th Cir. May 31, 2023) (order granting intervention); ECF No. 28 (motion to intervene). There, USW asserted that its members were exposed to the toxic chemical when asbestos sheet gaskets are used in certain conditions of use in oil refineries and petrochemical plants. *Id.*, ECF No. 28 at 5. Here, because the AFL-

CIO is acting on behalf of *all* of its affiliated unions and their members, its interest in methylene chloride is, in fact, broader, spanning a variety of conditions of use regulated by EPA's Rule and including both uses subject to the WCPP and its associated exposure limits and uses that are wholly prohibited under the Rule.

In addition to elaborating on this particularized interest, the AFL-CIO noted in its Motion to Intervene that it and its affiliated unions have a long history of participating as intervenors or petitioners on occupational safety matters involving toxic chemicals, including as to methylene chloride itself. This does not mean, as Industry Petitioners assert, that the AFL-CIO claims that "it is always a proper intervenor," merely because it "has been allowed to intervene in other cases." Opp. at 14. Instead, the AFL-CIO's long history of participation in the development of occupational safety law is testament to courts' common-sense recognition that the country's largest federation of labor unions is routinely able to establish that it has a protectable interest in the regulation of toxic chemicals *in the workplace*.

Finally, the AFL-CIO did not argue, as Industry Petitioners claim, that its interest was limited to protecting "underlying doctrines to avoid precedent that might make its future advocacy more difficult." Opp. at 17. Though the AFL-CIO did advert to its broader desire to promote a pro-worker interpretation of OSH Act and TSCA law, the primary interest that will be impaired is the health of its

9

members. If Industry Petitioners prevail on their claims, presumably the Final Rule (or some part of it) will be invalidated, and members of AFL-CIO-affiliated unions will continue to be exposed to methylene chloride at levels that EPA has deemed unsafe and some will suffer from preventable diseases as a result. The impairment of these union members' interest in their health is more than enough to a basis for intervention by the AFL-CIO.

### III. The AFL-CIO Has Demonstrated that EPA May Not Adequately Represent its Interests

Finally, the AFL-CIO has proven that EPA's representation of its interests "*may* be inadequate." *La Union del Pueblo Entero v. Abott,* 29 F.4th 299, 307 (5th Cir. 2022). First, the AFL-CIO has great subject-matter experience in interpreting OSHA requirements—including, as relevant here, requirements relating to personal protective equipment (PPE) and the use of respirators—whereas EPA does not. While the AFL-CIO agrees with the overall rule produced by EPA, we have noted in our comments on the NPRM that certain language in the NPRM preamble suggested a misunderstanding of OSHA requirements, such as whether employers could be under a duty to implement measures to control exposures below an OSHA exposure limit, and whether OSHA requires the use of PPE for methylene chloride exposures at the levels that pose unreasonable risk.

In line with its long engagement on the subject, the AFL-CIO also has information about the regulation of methylene chloride in the workplace that EPA does not. This includes unions' testimony from OSHA rulemaking proceedings that led to the establishment of that agency's current methylene chloride standard, as well as real-world information concerning air monitoring data, the mechanisms of exposure to the chemical, and worker training. Reindel Decl. ¶¶ 7-8.

The AFL-CIO's interest is both narrower and deeper than EPA's. The Rule regulates a number of non-occupational conditions of use which do not implicate the AFL-CIO's interests. In defending the Rule, EPA must consider the interests of a variety of stakeholders, including consumer and other non-occupational users of methylene chloride. So, while the AFL-CIO's interests are congruent with EPA's, they are not identical.

Lastly, EPA policy regarding methylene chloride has veered back and forth over the years, sometime favorable to the AFL-CIO and its affiliated unions and other times adverse to their interests. *See, e.g., Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.) (USW challenge to earlier methylene chloride risk management rule). Intervention is permissible where the intervenor and agency's interests "may diverge in the future, even though, at this moment, they appear to share common ground." *Heaton v. Monogram Credit Card Bank of*

*Georgia,* 297 F.3d 416, 425 (5th Cir. 2002).

## CONCLUSION

For the foregoing reasons, the Court should grant the AFL-CIO's motion to intervene.

                            Respectfully submitted,

                            <u>/s/ Randy S. Rabinowitz</u>
                            Randy S. Rabinowitz
                            OSH Law Project, LLC
                            P.O. Box 3769
                            Washington, DC 20027
                            202-256-4080
                            randy@oshlaw.org

                            Victoria L. Bor
                            OSH Law Project, LLC
                            P.O. Box 3769
                            Washington, DC 20027
                            301-785-3204
                            victoriabor87@gmail.com

                            Matthew Ginsburg
                            General Counsel
                            AFL-CIO
                            815 Black Lives Matter Plaza N.W.
                            Washington, DC 20006
                            (202) 637-5397
                            mginsburg@aflcio.org

                            *Attorneys for AFL-CIO*

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Leave to Intervene contains 2,576 words, as counted by counsel's word processing system, and thus complies with the 2,600 word limit. *See* Fed. R. App. P. 27(d)(2)(C).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: July 24, 2024

*/s/ Randy S. Rabinowitz*

Randy S. Rabinowitz

**CERTIFICATIONS UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: July 24, 2024

*/s/ Randy S. Rabinowitz*

# CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2024, I electronically filed the foregoing Reply Brief in Support of Motion for Leave to Intervene using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that on July 24, 2024, I sent a copy of the foregoing Motion for Leave to Intervene via first-class mail to the following address:

>Jeffrey Prieto General Counsel
>United States Environmental Protection Agency Mail Code 2310A
>Environmental Protection Agency
>1200 Pennsylvania Avenue, N.W.
>Washington, DC 20460

>Dated: July 24, 2024

>*/s/Randy Rabinowitz*
>Randy Rabinowitz