IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 24-60227

EAST FORK ENTERPRISES, INC.; EPIC PAINT COMPANY;

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL
S. REGAN, Administrator, United States Environmental Protection Agency,

*Respondents.*

<u>consolidated with</u>

No. 24-60256

EAST FORK ENTERPRISES, INC.; EPIC PAINT COMPANY; SIERRA CLUB;
AMERICAN CHEMISTRY COUNCIL;

*Petitioners,*

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; MICHAEL
S. REGAN, Administrator, United States Environmental Protection Agency,

*Respondents.*

**MOTION FOR LEAVE TO INTERVENE ON BEHALF OF
RESPONDENTS**

Randy S. Rabinowitz
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202-256-4080
randy@oshlaw.org

Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
301-785-3204
victoriabor87@gmail.com

Matthew Ginsburg
General Counsel
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org


*Attorneys for AFL-CIO*

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1
have an interest in the outcome of this case. These representations are made in
order that the judges of this Court may evaluate possible disqualification or recusal.

1. <u>Petitioners</u>: East Fork Enterprises, Inc.; Epic Paint Company; Sierra Club

2. <u>Counsel for Petitioners East Fork Enterprises, Inc. and Epic Paint Company</u>: Keith Bradley, Caffey Norman, and Allan Kacenjar, Squire Patton Boggs (US) LLP

3. <u>Counsel for Petitioner Sierra Club</u>: Jonathan Kalmuss-Katz and Lakendra Barajas, Earthjustice

4. <u>Counsel for Petitioner/Intervenor American Chemistry Council</u>: David Chung, Crowell & Moring, LLP

5. <u>Respondents</u>: United States Environmental Protection Agency; Michael S. Regan, in his capacity as Administrator, U. S. Environmental Protection Agency

6. <u>Counsel for Respondents</u>: Merrick Garland, Attorney General; Todd Sunhwae Kim, Assistant Attorney General; Laura J. Brown, Senior Attorney, U.S. Department of Justice

7. <u>Proposed Intervenor</u>: American Federation of Labor-Congress of Industrial Organizations (AFL-CIO). The AFL-CIO is the federation of 60 national and international labor unions representing 12.5 million working people across a wide variety of industries. The AFL-CIO has no parent companies and no publicly held company owns a 10% or greater interest in the AFL-CIO.

8. <u>Counsel for AFL-CIO</u>: Matthew Ginsburg, General Counsel, AFL-CIO. Randy S. Rabinowitz; Victoria L. Bor, Occupational Safety and Health Law Project, LLC.

Respectfully submitted,

/s/ Randy S. Rabinowitz
Randy S. Rabinowitz
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202-256-4080
randy@oshlaw.org

Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
301-785-3204
victoriabor87@gmail.com

Matthew Ginsburg
General Counsel
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Attorneys for AFL-CIO*

## MOTION FOR LEAVE TO INTERVENE ON BEHALF OF RESPONDENTS

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Fifth Circuit Local Rule 15.5, the American Federation of Labor and Congress of Industrial Organizations ("AFL-CIO") moves to intervene in support of Respondents U.S. Environmental Protection Agency and Administrator Michael S. Regan (collectively, "EPA") and in opposition to the Petition for Review filed by Petitioner American Chemistry Council ("ACC").

As required by Fifth Circuit Local Rule 27.4, the undersigned counsel contacted counsel for the other parties to determine their position on this motion. Neither EPA nor ACC takes any position on this motion. East Fork Enterprises and Epic Paint Company reserve the right to review the motion before deciding whether to oppose. Sierra Club, the petitioner in a consolidated proceeding, does not oppose the motion.

ACC seeks review of the Final Rule of the Environmental Protection Agency (EPA), "Methylene Chloride; Regulation Under the Toxic Substances Control Act (TSCA)," 89 Fed. Reg. 39,254 (May 8, 2024) ("Methylene Chloride Rule" or "Rule"). Occupational exposure to methylene chloride is a well-recognized health hazard. Pursuant to a regulation issued in 1997, the Occupational Safety & Health Administration ("OSHA") regulates workplace

exposures to methylene chloride to a limit of twenty-five (25) parts per million. 29 C.F.R. §1910.1052. Even in issuing this standard, however, OSHA conceded that this exposure limit leaves employees exposed to "clearly significant" adverse health risks. 62 Fed. Reg. 1494, 1562 (Jan. 10, 1997).

Congress amended TSCA in 2016 by passing the Frank F. Lautenberg Chemical Safety for the 21st Century Act, Pub. L. No. 114-182, 130 Stat. 448, 462-62 (2016). As amended, TSCA directs EPA to assess and control unreasonable risks associated with exposures to both new and existing toxic substances, and in doing so, to pay special attention to the risks posed to any "potentially exposed or susceptible subpopulation," including workers. 15 U.S.C. §§ 2605(b)(4)(A), 2602(12). Methylene chloride is among the first toxic substances EPA has addressed following the 2016 TSCA amendments. In its risk evaluation, EPA found exposure to methylene chloride associated with cancer, liver disease, and other serious health risks at levels far below OSHA's current occupational exposure limit and concluded that these risks are unreasonable. 89 Fed. Reg. at 39257.

Section 6(a) of TSCA directs that when EPA finds that exposure to a chemical substance presents an "unreasonable risk to health or the environment," the Agency "shall" adopt a rule "to the extent necessary so that the chemical substance no longer present such risk." 15 U.S.C. § 2605(a). EPA adopted the

Methylene Chloride Rule challenged here to accomplish its statutory duty to eliminate the unreasonable risk posed by methylene chloride. 89 Fed. Reg. at 39255. The Rule does so by banning continued use of methylene chloride for many conditions of use, while permitting its continued use in other instances, if owners/operators subject to the rule implement stringent worker protections. *Id.*

The AFL-CIO is a federation of 60 labor unions that together represent 12.5 million workers in a variety of industries. Tens of thousands of workers who are members of AFL-CIO and its affiliates are exposed to methylene chloride on the job. Thousands of these workers will see their workplace exposures eliminated through the regulation's bans. Thousands of others will have their workplace exposure significantly reduced, as long as their employers comply with the workplace protections the regulation mandates. All of these workers will gain protections under EPA's Methylene Chloride Rule that are necessary for preserving their health, protections that would be jeopardized should ACC prevail in this matter.

On July 12, 2024, the AFL-CIO moved to intervene in opposition to a separate Petition for Review filed by East Fork Enterprises, Inc. and Epic Paint Company, two companies that filed a separate challenge to the Rule. ECF No. 37. Those Petitioners opposed the AFL-CIO's motion to intervene on multiple grounds,

including objections based on timeliness and a purported failure to establish adversity with the specific companies who filed suit. *See* ECF No. 42 at 5-12 (timeliness); 13 (alleging that AFL-CIO's members have not "shown any stake in whether petitioners are or are not allowed to produce or sell products containing methylene chloride"). This Court denied that motion on July 30, 2024. ECF No. 56. The Court's order does not identify the basis on which the AFL-CIO's motion to intervene was denied. However, the present motion addresses the issues raised by those Petitioners —it is indisputably timely under Federal Rule of Appellate Procedure 15(d), and the AFL-CIO's interests would clearly be impaired by the success of ACC's petition. As set forth below, the AFL-CIO satisfies the standards both for intervention as of right and permissive intervention.

## I.     The AFL-CIO is Entitled to Intervention as of Right

A party may intervene by right in this Court if it satisfies the four elements of Federal Rule of Civil Procedure 24(a):

> (1) the application must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. U.S. Dep't of Energy,* 752 F.2d 550, 552 (5th Cir. 1985). Although it is the

movant's burden to establish the right to intervene, "Rule 24 is to be liberally construed," with "doubts resolved in favor of the proposed intervenor," *Entergy Gulf States La., LLC v. EPA,* 817 F.3d 198, 203 (5th Cir. 2016), and intervention allowed "where no one would be hurt and the greater justice could be attained." *La Union del Pueblo Entero v. Abbott,* 29 F.4th 299, 305 (5th Cir. 2022) (internal citations and quotation marks omitted); *see also id.* (quoting *Miller v. Fed'n of S. Coops,* No. 21-11271, 2022 WL at *4 (5th Cir. Mar. 22, 2022, noting "'our broad policy favoring intervention' and the intervenor's 'minimal burden.'")  The AFL-CIO easily satisfies each of Rule 24(a)'s elements.

### A.    The AFL-CIO's Motion is Timely

Under Federal Rule of Appellate Procedure 15(d), any motion to intervene "must be filed within 30 days after the petition for review is filed." And under this Court's Local Rule 15.5, motions to intervene "under Fed. R. App. P. 15(d) should be filed promptly after the petition for review of the agency proceeding is filed, but not later than 14 days prior to the due date of the brief of the party supported by the intervenor."

ACC filed its petition in the U.S. Court of Appeals for the District of Columbia Circuit on July 19, 2024. *See American Chemistry Council v. EPA*, No. 24-1256 (D.C. Cir.). This motion is being filed on August 9, 2024, less than 30

days after the petition was filed. Respondents' brief is due on October 9, 2024, sixty (60) days after the filing of this motion. Accordingly, the motion is timely.

**B.     The AFL-CIO Has Strong Interests in the Matters at Issue in this Case**

Federal Rule of Civil Procedure 24(a)(2) requires that to intervene by right, a party must claim "an interest relating to the property or transaction that is the subject of the action." This Court has interpreted this rule to require a "direct, substantial, legally protectable interest in the proceedings." *Edwards v. City of Houston,* 78 F.3d 983, 995 (5h Cir. 1996) (en banc).

> [A] "legally protectable interest" does not mean the interest must be legally *enforceable*": "[A]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement [ . . . .]" *Texas,* 805 F.3d at 659. In fact, we have said that in a case involving "a public interest - question" that is "brought by a public interest group," the "interest requirement may be judged by a more lenient standard." *Brumfield* [*v. Dodd,*] 749 F.3d 339, 344 (5th Cir 2014).

*La Union del Pueblo Entero,* 29 F.4th at 305-06 (emphasis in original).

The AFL-CIO has a keen interest in the subject of this action.  Ensuring that the Methylene Chloride Rule is upheld and ACC's challenge to it rejected will provide increased protection from adverse health effects to the members of its affiliated unions. The AFL-CIO and its affiliates represent workers in a wide variety of industries where methylene chloride is used, including chemical and

automobile manufacturing, furniture making and construction, as a paint stripper, a solvent and a degreasing agent. The challenged Rule bans the usage of methylene chloride and methylene chloride-containing products in an array of conditions of use, including, for instance, paint and coating removal. In that regard, the ban will directly affect construction workers represented by affiliates of North America's Building Trades Unions (NABTU). *See* Declaration of Rebecca Reindel, ¶ 11. For conditions of use in which the rule does not ban methylene chloride, owners and operators must implement and comply with worker protection programs. These conditions include domestic manufacturing, processing as a reactant, and use as a processing aid, which affect workers represented by AFL-CIO affiliates United Steelworkers (USW) and United Auto Workers (UAW). *Id.* at ¶¶ 12-13.

As this Court has recognized, exposure to toxic chemicals constitutes particularized harm. *Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.,* 207 F.3d 789, 792 (5th Cir. 2000). And a labor union that can demonstrate that its members will be exposed to toxic chemicals has shown an interest sufficient to warrant intervention. Recognizing this principle, less than two months ago this Court granted AFL-CIO affiliate USW's motion to intervene to support respondents in an analogous TSCA proceeding concerning a risk management rule regulating chrysotile asbestos. *See Texas Chemistry Council v.*

*EPA*, No. 24-60193, ECF No. 61 (5th Cir. May 31, 2023) (order granting intervention); ECF No. 28 (motion to intervene). There, USW asserted that its members were exposed to the toxic chemical when asbestos sheet gaskets are used in certain conditions of use in oil refineries and petrochemical plants. *Id.*, ECF No. 28 at 5. Here, because the AFL-CIO is acting on behalf of *all* of its affiliated unions and their members, its interest in methylene chloride is, in fact, broader, spanning a variety of conditions of use regulated by EPA's Rule and including both uses subject to the WCPP and its associated exposure limits and uses that are wholly prohibited under the Rule

On a broader level, courts have long recognized the strength of the AFL-CIO's interest in promoting health and safety protections for union members by routinely allowing the federation and its affiliated unions to intervene in review of agency proceedings, including in cases that have shaped occupational safety law. For instance, in reviewing a OSHA standard regulating occupational exposures to benzene, this Court granted the AFL-CIO's Industrial Union Department leave to intervene and noted that it "was an active participant in this case and offered considerable support to OSHA's position." *Am. Petroleum Inst. v. OSHA*, 581 F.2d 493, 499 n.16 (5th Cir. 1978). The AFL-CIO later petitioned for certiorari, leading to a landmark decision in which the Supreme Court established a general rule

concerning the threshold finding of risk that OSHA must make before promulgating any health or safety standard. *Indus. Union Dep't v. Am. Petroleum Inst.*, 448 U.S. 607, 642 (1980) ("*Benzene*"). Other cases where AFL-CIO-affiliated unions participated as intervenors include: *Nat'l Mining Assoc. v. United Steelworkers*, 985 F.3d 1309 (11th Cir. 2021) (USW, mine health and safety standards); *Kennecott Greens Creek. Min. Co. v. MSHA*, 476 F.3d 946 (D.C. Cir. 2007) (same); *Am. Iron & Steel Inst. v. OSHA*, 939 F.2d 975 (D.C. Cir. 1991) (UAW and USW, airborne lead standard).

The AFL-CIO and its affiliated unions have been particularly engaged in seeking to control the hazards of methylene chloride for decades, seeking reductions in exposure limits for methylene chloride before OSHA in proceedings dating back to the 1980s and 1990s. *See* Reindel Decl. at ¶ 6. And AFL-CIO-affiliated unions continued to push for increased protections from methylene chloride when EPA began to evaluate those risks under TSCA, by commenting on EPA's risk evaluation of methylene chloride and its proposed risk management rule to regulate the risks of methylene chloride. *Id.* at ¶ 9. When EPA's initial risk evaluation found no unreasonable risk for several methylene chloride conditions of use, the USW joined with several environmental organizations to challenge EPA's finding. *See Neighbors for Environmental Justice v. EPA,* No. 20-72091 (9th Cir.).

When EPA issued a risk management rule banning certain consumer uses of methylene chloride but delaying action on its commercial uses and attendant occupational exposures, NABTU filed an amicus brief challenging the delay in *Labor Council for Latin American Advancement v. EPA,* No. 19-1042 (2d Cir. 2021).

In short, the AFL-CIO and its affiliates have well-established and well-recognized interests in protecting the health of workers generally and have specifically been engaged for decades in ensuring that workers are protected from the unreasonable risks posed by occupational exposure to methylene chloride.

### C. Disposition of the ACC Petition May Impair the AFL-CIO's Ability to Protect its Interests

The pending petition brought by ACC undoubtedly seeks to weaken or eliminate the worker protections EPA has adopted in the Methylene Chloride Rule, thus directly impairing the health and safety of AFL-CIO members and undermining the collective bargaining position of AFL-CIO-affiliated unions.[1]

---

[1] The ACC is an association that "represents more than 190 companies engaged in the business of chemistry." "*See* American Chemistry Council, "About ACC," https://www.americanchemistry.com/about-acc (last accessed July 24, 2024).

In comments filed in response to the Notice of Proposed Rulemaking ("NPRM") that led to the Rule challenged here, ACC argued, *inter alia*, (1) that various conditions of use posed no unreasonable risk to health and safety and should be subject to no additional regulation; (2) that EPA should have presumed, contrary to

In doing so, they are also likely to be attacking EPA's authority to issue similar risk management rules. As noted, the Methylene Chloride Rule at issue in this case is among the first risk management rules EPA has adopted since Congress amended TSCA. EPA has touted this Rule as a template for future risk management rules under TSCA. Just as the *Benzene* case that the AFL-CIO litigated as intervenor to the Supreme Court did for standard-setting under the OSH Act, resolving the ACC Petition may therefore set toxic chemical regulatory policy for decades to come. Thus, depending on the positions that ACC takes, the disposition of its Petition could impair not only the AFL-CIO's ability to protect its members from exposure to methylene chloride, but from all chemicals whose risks EPA may evaluate.

### D. Existing Parties May Not Adequately Represent the AFL-CIO's Interests

This Court has recognized a presumption of adequate representation when

---

OSHA practice, that workers are constantly using Personal Protective Equipment ("PPE") in measuring exposures; and (3) that EPA insufficiently substantiated the exposure limits that it established. *See* ACC Comments in Response to Environmental Protection Agency, NPRM, "Methylene Chloride; Regulation under the Toxic Substances Control Act (TSCA)," filed July 3, 2023, *available at* https://www.regulations.gov/comment/EPA-HQ-OPPT-2020-0465-0281.

AFL-CIO members' health and safety would be impaired if ACC were to prevail on similar arguments before this Court.

the intervenor "has the same ultimate objective as a party to the lawsuit," a presumption that can be overcome if "its interests diverge . . . in a manner germane to the case." *Texas,* 805 F.3d at 661-62.[2] Although the AFL-CIO intends to intervene in favor of EPA in light of its overall support of the Rule, the AFL-CIO's interests and those of EPA may nonetheless diverge during this litigation, and thus, EPA's representation "*may* be inadequate." *La Union del Pueblo Entero,* 29 F.4th at 307 (the movant "need not show that the representation by existing parties will be, for certain inadequate, but instead that it *may* be inadequate") (internal quotations and citation omitted; emphasis in original).[3]

First, the AFL-CIO has great subject-matter experience in interpreting OSHA requirements—including, as relevant here, requirements relating to PPE and the use of respirators—whereas EPA does not. We have noted in our comments on the NPRM that certain language in the NPRM preamble suggested a

---

[2] This Court recognizes a second presumption "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.* at 551, quoting *Edwards v. City of Houston,* 78 F.3d at 1005. As EPA is not "charged by law" with representing the AFL-CIO's interests, that presumption is inapplicable here.

[3] The bar for demonstrating that existing parties may not adequately represent the putative intervenor's interests appears to be quite low. In its motion to intervene, ACC made no effort to explain why Petitioners East Fork Enterprises and Epic Paint Company would not adequately represent ACC's interests. ECF No. 45. This Court nonetheless granted ACC's petition to intervene. ECF No. 52.

misunderstanding of OSHA requirements, such as whether employers could be under a duty to implement measures to control exposures below an OSHA exposure limit, and how OSHA factors in the use of PPE in developing its requirements.

In line with its long engagement on the subject, the AFL-CIO also has information about the regulation of methylene chloride in the workplace that EPA does not. This includes unions' testimony from OSHA rulemaking proceedings that led to the establishment of the current methylene chloride standard, as well as real-world information concerning air monitoring data, the mechanisms of exposure to the chemical, and worker training. Reindel Decl. ¶¶ 7-8.

The AFL-CIO's interest is both narrower and deeper than EPA's. The Rule regulates a number of non-occupational conditions of use which do not implicate the AFL-CIO's interests. In defending the Rule, EPA must consider the interests of a variety of stakeholders, including consumer and other non-occupational users of methylene chloride. If EPA were to seek a potential resolution of this action, EPA may balance the relative importance of issues differently than the AFL-CIO, whose focus is limited exclusively to methylene chloride in the workplace.

Lastly, EPA has made policy shifts in the regulation of methylene chloride and, in the past, was adverse to AFL-CIO-affiliated unions. *See, e.g., Neighbors for*

*Environmental Justice v. EPA,* No. 20-72091 (9th Cir.) (USW challenge to earlier

methylene chloride risk management rule). Intervention is permissible where the

intervenor and agency's interests "may diverge in the future, even though, at this

moment, they appear to share common ground." *Heaton v. Monogram Credit Card*

*Bank of Georgia,* 297 F.3d 416, 425 (5th Cir. 2002).


## II. In the Alternative, the AFL-CIO Satisfies the Requirements for Permissive Intervention

Federal Rule of Civil Procedure 24(b)(1)(B) gives the Court broad discretion

to grant permissive intervention when

> (1) timely application is made by the intervenor, (2) the intervenor's
> claim or defense and the main action have a question of law or fact in
> common, and (3) intervention will not unduly delay or prejudice the
> adjudication of the rights of the original parties.

*League of United Latin Am. Citizens, Council No. 4434 v. Clements,* 884 F.2d 185,

189 n.2 (5th Cir. 1989). First, as explained above, this motion is timely. Second, as

the AFL-CIO is seeking to defend EPA's Methylene Chloride Rule, its arguments

will, of necessity, share questions of law and fact with the Petitioners and the

Agency. Finally, as this case is in the very early stages of litigation, granting

intervention will neither delay its resolution nor in any way prejudice the rights of

the original parties.

## CONCLUSION

For the foregoing reasons, the Court should grant the AFL-CIO's motion to intervene in opposition to the ACC's petition for review and in support of Respondent EPA.

Respectfully submitted,

/s/ Randy S. Rabinowitz
Randy S. Rabinowitz
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
202-256-4080
randy@oshlaw.org

Victoria L. Bor
OSH Law Project, LLC
P.O. Box 3769
Washington, DC 20027
301-785-3204
victoriabor87@gmail.com

Matthew Ginsburg
General Counsel
AFL-CIO
815 Black Lives Matter Plaza N.W.
Washington, DC 20006
(202) 637-5397
mginsburg@aflcio.org

*Attorneys for AFL-CIO*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), counsel hereby certifies that the foregoing Motion for Leave to Intervene contains 3277 words, as counted by counsel's word processing system, and thus complies with the 5,200-word limit. *See* Fed. R. App. P. 27(d)(2)(A).

Further, this document complies with the typeface and type-style requirements of the Federal Rules of Appellate Procedure, 32(a)(5) and (a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 using size 14 Times New Roman font.

Dated: August 9, 2024

*/s/ Randy S. Rabinowitz*

Randy S. Rabinowitz

**CERTIFICATIONS UNDER ECF FILING STANDARDS**

Pursuant to paragraph A(6) of this Court's ECF Filing Standards, I hereby certify that (1) required privacy redactions have been made, 5th Cir. R. 25.2.13; (2) the electronic submission is an exact copy of the paper document, 5th Cir. R.25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Dated: August 9, 2024

*/s/ Randy S. Rabinowitz*

**CERTIFICATE OF CONFERENCE**

Pursuant to Fifth Circuit Rule 27.4, I certify that that on August 7-8, 2024, I contacted counsel for Petitioners and Respondents to ask for their positions on the AFL-CIO's motion for leave to intervene. Neither Petitioner ACC nor Respondent EPA takes any position on the motion. Petitioners East Fork Enterprises, Inc. and Epic Paint Company reserve the right to review the motion and respond. Petitioner Sierra Club does not oppose the motion.

Dated: August 9, 2024

*/s/ Randy Rabinowitz*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2024, I electronically filed the foregoing

Motion for Leave to Intervene using the appellate CM/ECF system. Participants in

the case who are registered CM/ECF users will be served by the appellate CM/ECF

system.

I further certify that on August 9, 2024, I sent a copy of the foregoing

Motion for Leave to Intervene via first-class mail to the following address:

Jeffrey Prieto General Counsel
United States Environmental Protection Agency Mail Code 2310A
Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, DC 20460

Dated: August 9, 2024

*/s/Randy Rabinowitz*
Randy Rabinowitz

<u>**DECLARATION OF REBECCA L. REINDEL**</u>

I, REBECCA L. REINDEL, hereby declare as follows:

1. My name is Rebecca Reindel. Since 2019, I have served as the Director of Occupational Safety & Health at the American Federation of Labor & Congress of Industrial Organizations (AFL-CIO), a federation of 60 national and international labor unions. I submit this declaration in support of the AFL-CIO's motion to intervene in defense of the Environmental Protection Agency's ("EPA's") final rule banning unsafe uses of methylene chloride. See Methylene Chloride; Regulation Under the Toxic Substances Control Act (TSCA), 89 Fed. Reg. 39,254 (May 8, 2024) (the "Methylene Chloride Rule").

2. I have a B.S. in Biology with coursework in Chemistry from Wheeling Jesuit University, an M.S. in Forensic Toxicology from the George Washington University and an M.P.H. in environmental and occupational health from the George Washington University. I am currently enrolled at Johns Hopkins University in pursuit of a doctorate in public health, with a focus on environmental health and engineering, particularly occupational health.

3. As part of my role as Director of Occupational Safety & Health, I coordinate technical and policy staff who are involved in national, state and local advocacy, and respond to inquiries from unions and other organizations representing members in workplaces across the country who raise questions about health and safety. In this capacity, my staff and I monitor regulatory developments affecting chemicals to which our members are exposed and actively participate in regulatory proceedings affecting such chemicals, including methylene chloride.

4. In addition to my role at the AFL-CIO, since 2021, I have served on the National Advisory Committee on Occupational Safety and Health, the federal advisory committee established by the Occupational Safety and Health Act, and co-chaired its heat injury and illness prevention work group that delivered recommendations to the agency. From 2010 to 2014, I worked for the Occupational Safety and Health Administration ("OSHA") writing standards on occupational exposure to chemicals.

<u>The AFL-CIO's Interest in Methylene Chloride</u>

5. The AFL-CIO and its affiliated unions represent over 12.5 million working people across a wide spectrum of industries. Tens of thousands of our members who work in manufacturing, construction, and the public sector are regularly subjected to occupational exposures to methylene chloride that place their health at risk. Although many of these members are in workplaces covered by a current OSHA standard, that standard is inadequately protective.

6. The AFL-CIO and its affiliated unions have advocated for decades for more stringent regulation of methylene chloride on the job. OSHA first regulated methylene chloride in 1971, when it imposed an 8-hour time weighted permissible exposure limit ("PEL") of 500 ppm to protect workers from acute neurological effects. In 1985, when scientific evidence emerged that methylene chloride causes cancer, it was AFL-CIO-affiliated unions, including the United Steelworkers ("USW") and the United Auto Workers ("UAW"), who petitioned OSHA for further regulation.[1]

7. After years of proceedings in which AFL-CIO-affiliated unions provided extensive testimony and expertise, OSHA issued its current methylene chloride standard in 1997. This standard requires employers to ensure that workers' airborne exposure to the chemical does not exceed 25 ppm over an 8-hour time weighted average, or over 125 ppm over a short-term sampling period of 15 minutes. 29 C.F.R. § 1910.1052(c). In the rulemaking, OSHA conceded that these limits were not fully health protective and that even at 25 ppm, workers would remain exposed to "unacceptably high" cancer risks, but the agency was constrained by what it considered to be technologically feasible at the time.[2]

8. Since the 1997 OSHA standard issued, the AFL-CIO and its affiliated unions have worked to implement the standard through a variety of means. We have represented workers during OSHA investigations and inspections, performed the collection of and reviewed industrial hygiene exposure data including air monitoring data, trained workers on the dangers of methylene chloride and the requirements of the standard, recorded cases of illness and death due to methylene chloride, and assisted members in filing OSHA complaints for methylene chloride exposure.

9. After the 2016 amendments to TSCA provided EPA with a powerful mandate to control methylene chloride, the AFL-CIO and its affiliated unions consistently advocated to the agency for strong regulation. On June 30, 2023, we submitted joint comments in response to EPA's Notice of Proposed Rulemaking concerning this Rule, together with the USW, the UAW, and North America's Building Trades Unions ("NABTU"), a labor organization comprised of fourteen national and international unions representing workers in the construction trades.

10. In the present day, our members currently handle methylene chloride under a variety of conditions of use subject to the Final Rule. Many of these members will benefit from the elimination of methylene chloride in hazardous conditions of use for which employers could not demonstrate an ability to adequately control exposures, while others will benefit from the Rule's requirement of a rigorous Workplace Chemical Protection

---

[1] *See* Occupational Safety and Health Administration, "Occupational Exposure to Methylene Chloride," 62 Fed. Reg. 1494, 1497 (Jan. 10, 1997).
[2] *Id.* at 1562.

Program ("WCPP") for those conditions of use where the chemical will continue to be used.

11. Thousands of members of our building trades affiliates who are members of NABTU are regularly exposed to methylene chloride as a paint stripper. Because employers could not demonstrate an ability to adequately control exposures under this condition of use, the Methylene Chloride Rule bans "industrial and commercial use in paints and coating removers."[3] These AFL-CIO members will directly benefit from Rule's mandate that methylene chloride be wholly eliminated for this condition of use.

12. The USW, an AFL-CIO affiliate that represents 1.2 million members and retirees, is the collective bargaining agent for workers at numerous facilities that EPA has identified as engaged in the domestic manufacturing of methylene chloride, as well as a facility that manufactures plastics and rubber and that processes methylene chloride as a reactant.

13. The UAW, an AFL-CIO affiliate that represents nearly 1 million members and retirees, is the collective bargaining agent for workers in aerospace manufacturing who use epoxies with methylene chloride as an ingredient and for workers who are exposed to methylene chloride as a processing aid in the production of lithium ion battery separators.

14. The AFL-CIO's members under the USW and UAW will directly benefit from the Methylene Chloride Rule's implementation of a rigorous WCPP in workplaces where the chemical will continue to be used. Because EPA concluded that exposures under the current OSHA standard lead to an unreasonable risk to health—namely, cancer and liver toxicity—its WCPP implements significantly more protective 8-hour and short-term exposure limits of 2 ppm and 16 ppm, respectively. 40 C.F.R. § 751.109(c).

East Fork Enterprises and Epic Paint Company's Petition Threatens the AFL-CIO's Unique Interest

15. Petitioners are likely to argue that the Rule's requirements are, in whole or in part, arbitrary and capricious and/or unsupported by substantial evidence. Any argument that undermines EPA's findings of substantial risk for conditions of use, its establishment of worker-protective permissible exposure limits and workplace mitigation measures under the WCPP, or its prohibition of condition of use for which the exposure limits cannot be met threatens the health of AFL-CIO members.

---

[3] The Rule continues to allow the use of methylene chloride for "industrial and commercial use in paint and coating removal" for safety critical, corrosion sensitive components of aircraft and spacecraft, but only under the protective WCPP described in ¶ 14. Members of the International Association of Machinists ("IAM"), an AFL-CIO affiliated union that represents 600,000 members and retirees, perform this work, and will benefit from the exposure limits and workplace protections provided by the WCPP.

16. Workplace health and safety are mandatory subjects of collective bargaining concerning which unions and employers must bargain in good faith. The Rule's limits on the use of methylene chloride constitute a minimum floor below which employers cannot go. Disturbing EPA's Rule would therefore affect the negotiating posture of AFL-CIO affiliated unions by altering employer's baseline responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this ___ day of July, 2024

_____

Rebecca L. Reindel