# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 24-60227

East Fork Enterprises, Incorporated; Epic Paint Company,

*Petitioners*

v.

United States Environmental Protection Agency; James Payne, Acting Administrator, United States Environmental Protection Agency,

*Respondents*

CONSOLIDATED WITH

No. 24-60256

East Fork Enterprises, Incorporated; Epic Paint Company; Sierra Club; American Chemistry Council,

*Petitioners*

v.

United States Environmental Protection Agency; James Payne, Acting Administrator, United States Environmental Protection Agency,

*Respondents*.

**PETITIONERS' MOTION TO
REMOVE DESIGNATIONS UNDER THE PROTECTIVE ORDER**

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
Tel: (202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
Tel.: (303) 830-1776
Fax: (303) 894-9239
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

KATHERINE WENNER
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

DAVID CHUNG
AMANDA SHAFER BERMAN
WARREN LEHRENBAUM
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
Tel.: (202) 624-2587
dchung@crowell.com

CROWELL & MORING, L.L.P.

*Counsel for American Chemistry Council*

Petitioners East Fork Enterprises, Inc., Epic Paint Co., and American Chemistry Council (collectively "Petitioners") respectfully move this Court, pursuant to Federal Rule of Appellate Procedure 27 and paragraph 6 of the protective order that the Court adopted on August 15, 2024 (Docs. 82, 89), to remove the protections of that order from certain documents, as specified below. The grounds for this motion are as follows:

1. This case consolidates three petitions challenging a rule issued by respondent ("EPA") under the Toxic Substances Control Act ("TSCA").

2. EPA provided the administrative record to the parties at the same time as it filed a certified index of the record; and EPA subsequently filed an amended index. Docs. 65, 99. But before EPA would provide the record, it asked all petitioners to consent to the issuance of a protective order regarding the administrative record in this case. EPA then moved the Court to issue the protective order, Doc. 82, and on August 15, 2024, the Court granted that motion, Doc. 89.

3. The protective order itself is an attachment to EPA's motion. Doc. 82-2 ("Protective Order"). The Protective Order states it covers both documents that are confidential (due, for example, to containing sensitive business information) and documents that are copyrighted. *Id.* ¶ 3.

4. Under the Protective Order, EPA identifies a document or information as protected by marking it with an appropriate designation. *Id.* ¶ 5. But such

1

marking is not conclusive that the claim of protection is proper. *Id*. ¶ 6. The Protective Order reserves to any party the right to contest a designation, by means of a motion with this Court. *Id.*

5. EPA's certified index includes a column identifying documents that it has designated for protection, and stating the reason for the designation. Doc. 99 ("Index"). EPA identified three documents that contain confidential business information. Index, items 1020, 1023, 1155.

6. EPA has also designated, under the protective order, approximately 320 documents for which the sole asserted basis for protection is that the documents are copyrighted. *E.g. id.*, item 290-309. The documents designated for protection include, for example, several epidemiological studies about the effects of methylene chloride in humans, the import of which is debated in the briefs. *Id.*; *see e.g.*, items 328, 392, 457, 517, 518, 537, 538, 548, 585, 673, 825, 826. These studies were generally published decades ago in widely available academic journals. Consistent with EPA's marking on the index, they do not contain any information that is conceivably confidential. The sole basis for protecting them under the Protective Order is their status as copyrighted.

7. Indeed, each of the documents that EPA designated on the basis of copyright (as indicated in the Index) is a comment submitted into the rulemaking

docket; a report filed in the record; or an article published in a widely available scientific journal.

8. EPA does not, so far as petitioners are aware, assert any copyright claim of its own to any of the materials. The copyright owners appear to be third parties with no participation in the rulemaking for which these materials are in the administrative record.

9. The consequence of EPA's designation of these materials under the Protective Order is that each petitioner, and each individual receiving the materials as part of the administrative record, is prohibited from disseminating the materials and information. Information protected under the Order "shall be received by and held in strict confidence by the parties and shall be used only for the purposes of this action, and shall not be used (except by the owner of such information) for any purpose outside of this action." Protective Order, ¶ 7. Aside from narrow exceptions to enable the use of the record materials for this case (such as by submitting the information to the Court), the authority and power of this Court currently restrain petitioners from discussing or sharing these documents and information.

10. In addition, the Protective Order obligates petitioners, when they make filings of the pertinent materials, to request that the materials be sealed. Protective Order, ¶ 5(b). Thus, there will be a motion to seal the joint appendix in this matter,

even though there is no confidential information in the joint appendix that could justify the sealing of a court record.

11. That the Government of the United States, invoking the powers of this Court, is restricting the petitioners from discussion and dissemination of factual information is a troubling constraint on free speech. The information and expressions at issue are in the petitioners' hands precisely because they were part of the record upon which EPA developed an important rule, a law with binding effect on the nation. Petitioners should be able to discuss this information freely and openly.

12. Petitioners recognize and agree that in some situations the public disclosure of information can be harmful, such as when that information is confidential business information or is private personal information. EPA has identified just three documents in the Index for which that is the case, and petitioners do not contest the application of the Protective Order to those documents.

13. Nonetheless, the potential claims of third parties under the Copyright Act are not a legitimate basis for this Court, exercising its authority, to prevent petitioners' dissemination of copyrighted materials, nor for the U.S. government to invoke the Court's authority to that end.

14. The Copyright Act itself prohibits unlicensed copying, distribution, etc., of copyrighted materials; but it also allows fair use, which is deemed not to be

infringement. 17 U.S.C. § 107. By contrast, as a consequence of EPA's designation of the materials at issue, the Protective Order bars petitioners from disclosing these materials outside of a small group of recipients (such as law firm staff), with no possibility of fair use. The Protective Order also bars petitioners from even disclosing counsel's notes describing information in the scientific articles, Protective Order, ¶ 3(d), even though "[i]n no event may copyright extend to the facts themselves," *Feist Pubs., Inc. v. Rural Telephone Serv. Co.*, 499 U.S. 340, 351 (1991). Further, the Protective Order prohibits disclosure or discussion of information contained in protected materials, even though the Copryight Act only restricts (as relevant here) reproduction of a protected work in a material object, distribution of such a copy, or public performance of a work. 17 U.S.C. § 106.[1] Copyright law does not restrict discussion of a work or disclosure of information about its content; but the Protective Order does impose such restrictions. In short, the Protective Order is far more restrictive than the Copyright Act itself, even though the Copyright Act is the putative reason for the protections on the material.

15. EPA has asserted that it must seek restrictions like those in the Protective Order in order to share copyrighted materials in the administrative record, lest EPA be at risk of infringing the copyrights in those materials. But EPA is

---

[1] Section 106 refers to "copies"; that term is defined to mean material objects embodying the copyrighted work. 17 U.S.C. § 101.

obligated under federal law to provide the administrative record to a petitioner. That obligation must coexist with the rights of authors of works included in the administrative record; both the fair use doctrine and the general principle of interpreting federal laws harmoniously can justify EPA in providing record materials that are copyrighted. Petitioners have been unable to find any case suggesting—or concluding—a federal agency's provision of an administrative record would be an act of copyright infringement.

16. Besides, if (hypothetically) providing the record was an infringing act, that infringement occurred when EPA transmitted the materials. Imposing severe restrictions on how Petitioners discuss or disclose the information in these materials does not change EPA's theoretical infringement liability. Indeed, Petitioners remain subject to copyright law; if a particular act by them would be infringing, it would be infringing with or without the Protective Order.

17. In conferral before the filing of this motion, EPA suggested removing the Protective Order designation only from the materials to be included in the joint appendix. That would not alleviate the full scope of the unjustified restrictions currently in place; only a handful of the documents will be in the joint appendix. And, at the same time, the suggestion reveals how unjustified the restrictions are. The joint appendix will be filed in court, and EPA's proposal would mean the joint appendix is unsealed, available for download from PACER by any member of the

public. The rest of the administrative record sits only in Petitioners' hands, and is consequently much less exposed to potential copying. Thus, while EPA maintains that theoretical copyright liability is the reason for protecting the materials at issue, EPA is willing to yield that point for the materials that would be at greatest risk of public copying.

18. Accordingly, Petitioners respectfully ask the Court to lift the Protective Order's restrictions, and allow them to speak about and distribute freely (subject, of course, to applicable law such as the Copyright Act) the scientific articles and similar materials that EPA has tried to maintain under protection. Petitioners move to remove the designations as protected from the documents that the Index identifies as copyrighted. This removal will lift the protections of the Protective Order from those documents.

19. Petitioners initiated conferral with EPA in October, well before the 14-day limit prescribed by paragraph 6 of the Protective Order. EPA opposes this motion. The Sierra Club, petitioner in one of the consolidated cases, consents to the relief requested in this motion. The other petitioners (and the American Chemistry Council as intervenor in the Sierra Club's case) are jointly submitting this motion.

February 10, 2025

Respectfully submitted,

*/s/ Keith Bradley*
KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

KATHERINE WENNER
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
(202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

DAVID CHUNG
AMANDA SHAFER BERMAN
WARREN LEHRENBAUM
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2595
(202) 624-2587
dchung@crowell.com

CROWELL & MORING, L.L.P.

*Counsel for American Chemistry Council*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,600 words, as determined by the word-count function of Microsoft Office 365.

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman Font.

*/s/ Keith Bradley*
Keith Bradley

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*