No. 24-60256

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 24-60227

East Fork Enterprises, Incorporated; Epic Paint Company,

*Petitioners*

v.

United States Environmental Protection Agency; James Payne, Acting Administrator, United States Environmental Protection Agency,

*Respondents*

CONSOLIDATED WITH

No. 24-60256

East Fork Enterprises, Incorporated; Epic Paint Company; Sierra Club; American Chemistry Council,

*Petitioners*

v.

United States Environmental Protection Agency; James Payne, Acting Administrator, United States Environmental Protection Agency,

*Respondents*.

**PETITIONERS' MOTION FOR REVIEW
AND LIFTING OF ABEYANCE**

W. Caffey Norman
2550 M Street, NW
Washington, D.C. 20037
Tel: (202) 460-9495
caffeynorman@outlook.com

Norman Law & Policy PLLC

Keith Bradley
Kayla Marie Mendez
717 17th Street, Suite 1825
Denver, CO 80202
Tel.: (303) 830-1776
Fax: (303) 894-9239
keith.bradley@squirepb.com

Samuel B. Ballingrud
2550 M Street, NW
Washington, DC 20037

Katherine Wenner
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

Squire Patton Boggs (US) LLP

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

David Chung
Amanda Shafer Berman
Warren Lehrenbaum
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
(202) 624-2587
dchung@crowell.com

Crowell & Moring, LLP

*Counsel for American Chemistry Council*

On February 14, 2025, respondents ("EPA") moved for a 120-day abeyance, with no real justification. Doc. 181 ("Abeyance Mot."). EPA indicated that petitioners East Fork Enterprises, Epic Paint, and American Chemistry Council (collectively "Industry Petitioners") opposed the motion. Yet on February 18, 2025, through a single judge, the Court granted that abeyance, Doc. 192-2, before Industry Petitioners had a chance to explain why the abeyance is both harmful and unwarranted. Compliance with the rule being challenged is already required, and costs are mounting. Meanwhile, EPA does not even offer that it plans to revise the rule, just that it wants to brief new leadership; and if EPA did revise the rule, that outcome would not alter the potential liability of companies for any compliance errors that may have occurred while the rule has been in force. Nothing but this Court's vacatur of the rule, as Industry Petitioners requested, can provide that relief; and nothing in EPA's motion justified delaying the adjudication of that remedy.

Industry Petitioners ask the Court to review, pursuant to Federal Rules of Appellate Procedure 27(b) and 27(c), the grant of EPA's abeyance motion; to lift the abeyance; and to proceed to schedule oral argument for this case. The grounds for this motion are as follows:

1. This case is a challenge to EPA's rule restricting activities with methylene chloride under the Toxic Substances Control Act ("TSCA"), 89 Fed. Reg. 39,254 (May 8, 2024).

2. The rule became effective on July 8, 2024. 89 Fed. Reg. at 39,254 (identifying effective date). Immediately on that date, "all persons using methylene chloride . . . for industrial and commercial refinishing" were required to comply with certain workplace restrictions and recordkeeping requirements. 40 C.F.R. § 751.117. A series of compliance dates follows. On February 3, 2025, it became unlawful to distribute "any methylene chloride-containing products, to retailers for any use." *Id.* § 751.107(b)(1). On May 5, 2025, "all retailers are prohibited" from selling "any methylene chloride-containing products, for any use." *Id.* § 751.107(b)(2). As Industry Petitioners explained in their opening brief, "retailer" is defined extraordinarily broadly, to cover any business that ever, on just a single occasion, provides any chemical substance (not just methylene chloride) to a consumer. 40 C.F.R. § 751.5; Doc. 100, at 69-70 ("Proof Br.").

3. On May 5, 2025, "all persons are prohibited from manufacturing" methylene chloride "except for" certain limited uses—such as emergency cleaning of spacecraft by NASA; refinishing of "wooden furniture, decorative pieces, and architectural fixtures of artistic, cultural, or historic significance"; and adhesives and sealants in aircraft, spacecrafts, and turbines. 40 C.F.R. § 751.107(b)(3), (7)-(9); *id.* §§ 751.107(a)(2)(i), 751.109(a). On August 1, 2025, processing of methylene chloride is prohibited for anything other than limited uses. Sales for anything other than limited uses are prohibited from January 2026. *Id.* §§ 751.107(a)(2)(i),

(b)(4)-(5), 751.109(a).[1]

4. TSCA gives exclusive jurisdiction for a challenge to such a rule to the courts of appeals. 15 U.S.C. § 2618(1)(A). A petition must be filed within 60 days of the promulgation of the rule. *Id.* Industry Petitioners promptly filed this action, with East Fork Enterprises and Epic Paint filing in this Court on May 22, 2024.

5. Industry Petitioners, together with EPA and with the Sierra Club, petitioner in a case consolidated alongside, jointly agreed on a proposed briefing schedule that would result in a deferred appendix, and final briefs incorporating citations to that appendix filed on February 28, 2025. The Court has not scheduled oral argument.

6. On February 14, 2025 (the same day the deferred joint appendix was filed), EPA moved the Court to hold the case in abeyance for 120 days. Abeyance Mot., at 1. EPA reported in that motion that Industry Petitioners oppose it, and that the Sierra Club takes no position before seeing the motion. *Id.*, ¶ 9. Under Federal Rule of Appellate Procedure 27, Industry Petitioners' oppositions would be due on February 24.

7. On February 18, the Court granted EPA's request for abeyance, through the action of a single judge. Doc. 192-2. No party had yet filed any response to EPA's motion. The February 18 order held this case in abeyance until June 18, 2025. *Id.*

---

[1] These three uses are prohibited later, from 2029 to 2034 (depending on the use). 40 C.F.R. § 751.107(b)(7)-(9).

3

8. Under Rule 27(b), "[a] party adversely affected" by a decision made without waiting for an opposition "may file a motion to reconsider, vacate, or modify that action." Fed. R. App. P. 27(b). Under Rule 27(c), "[t]he court may review the action of a single judge." Fed. R. App. P. 27(c). That review is *de novo*; the reviewing panel "is 'not bound to follow' an earlier order by a single judge." *United States v. Heyward*, 42 F.4th 460, 467 n.3 (4th Cir. 2022) (quoting *TypeRight Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151 (Fed. Cir. 2004)).

9. EPA's abeyance motion should have been, and should be, denied. EPA offered no real justification for its proposed abeyance. All it wants, it said, is an opportunity to "brief new agency leadership . . . so they can determine what, if any, action is necessary." Abeyance Mot. ¶ 3. EPA can undertake that briefing as things are; nothing in this case stands as an obstacle. EPA has no deadlines pending, other than the ministerial submission of its final brief incorporating citations to the deferred appendix; and the Court has not scheduled oral argument yet. EPA's need to brief its new leadership is no justification for delaying even the scheduling of oral argument.

10. EPA invoked the principle that a court has broad discretion to stay its proceedings. *Id.* ¶ 5. But that discretion is "not unbounded." *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983). "Proper use of this authority 'calls for the exercise of judgment, which must weigh competing interests and

4

maintain an even balance.'" *Id.* (quoting *Landis v. N. Am. Co.*, 299 US. 248, 254-55 (1936)).

11. EPA offered no argument regarding those "competing interests." *Landis* held that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." 299 U.S. at 255. The damage here is not just a "fair possibility," it is a certainty. The ban on methylene chloride is in force now. Sales of any methylene-chloride products to any "retailer," with the extraordinarily broad meaning of that word in EPA's regulation, *see* Proof Br. 69-70, are already prohibited. Sales by retailers will be prohibited on May 5—before EPA's requested abeyance has even ended. Companies using methylene chloride in manufacturing are *currently* required to limit exposures to EPA's stringent (and unnecessary) limits. 40 C.F.R. § 751.109. These restrictions require current and ongoing compliance from East Fork Enterprises and Epic Paint, and from American Chemistry Council's members. And the restrictions grow over the coming months, as set forth above.

12. Industry Petitioners need, and are entitled, to prompt adjudication of their claims that the Methylene Chloride Rule is unlawful and irrational. When EPA inquired whether Industry Petitioners would consent to the proposed abeyance, they asked that EPA agree to have the Rule stayed—for exactly the reasons outlined

above. EPA refused that request.

13. Meanwhile, to justify delaying that adjudication, EPA does not identify any "hardship or inequity" at all. Instead, it says simply that it wants to give new leadership time to assess whether they will want to reconsider the Rule. Abeyance Mot. ¶¶ 6-8. But the new leadership can make that assessment without an abeyance. There is no upcoming filing by EPA in which it would need to take a position, and no oral argument scheduled. EPA is not called to state a position in the immediate future on which it would need its leadership's review.

14. EPA notes that agencies can revise their rules. Abeyance Mot. ¶ 6. That is true of every rule in litigation, so cannot be enough to justify holding the case in abeyance. EPA cites cases about agencies that "seek[] to reconsider [their] action[s]," Abeyance Mot. ¶ 8 (quoting *Anchor Line Ltd. v. FMC*, 299 F.2d 124 (D.C. Cir. 1962)). But EPA is distinctly not seeking reconsideration here. EPA suggests only that it "could take action" like that, once its new leadership has reviewed the situation. This is well short of suggesting that EPA actually does plan to revisit the Methylene Chloride Rule.[2]

---

[2] EPA quotes *Anchor Line Ltd. v. Fed. Maritime Comm'n*, 299 F.2d 124 (D.C. Cir. 1962), as saying an agency *should* seek an abeyance. Abeyance Mot. ¶ 8. In *Anchor Line*, the agency had reconsidered its decision while litigation was pending, and the Court held that reconsideration decision was appropriate for judicial review in the circumstances. 299 F.2d at 125. In passing, the court suggested that when the agency planned to reconsider its action under review, it should have at least asked for an abeyance of the litigation first. Nothing about that passing remark suggests a

6

15. EPA notes multiple cases in which courts, including this one, have granted abeyances at the change in presidential administration. Abeyance Mot. ¶ 7. In *Union Carbide v. EPA*, No. 24-60615 (5th Cir. Jan. 29, 2025), and *Denka Performance Elastomer, LLC v. EPA*, No. 24-60351 (5th Cir. Feb. 7, 2025), EPA sought abeyances with the consent of the petitioners involved. *Landis* calls for more care when a party opposes a stay because of the harm it would cause.

16. In *American Fuel & Petrochemical Manufacturers v. EPA*, No. 19-1124 (D.C. Cir. Feb. 5, 2021), the D.C. Circuit did not hold the case in abeyance, but instead just rescheduled, by seven weeks (far less than the four-month abeyance EPA obtained here) an oral argument that was pending for just three weeks after EPA filed its motion.

17. The D.C. Circuit is no longer so willing to postpone its adjudication. In *United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union v. EPA*, No. 24-1151, an oral argument is scheduled for March 21. On February 5, 2025, EPA moved the Court to postpone the argument and hold the case in abeyance. Motion, Doc. 2098875, No. 24-1151 (D.C. Cir. Feb. 5, 2025). Certain petitioners opposed that abeyance on grounds that the questions of statutory interpretation presented there are matters for judicial

---

court should hold a case in abeyance just because an agency wants to contemplate whether it *might* want to reconsider.

decision anyway, under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024); and that agency reconsideration of the relevant issues will not eliminate the need for judicial resolution, but simply delay it. Labor Petitioners' Opposition, Doc. 2099993, pp.5-7, No. 24-1151 (D.C. Cir. Feb. 11, 2025). The D.C. Circuit then refused to pause that litigation. Order, Doc. 2100857, No. 24-1151 (D.C. Cir. Feb. 14, 2025).

18. The *United Steel* case—and the D.C. Circuit's refusal to pause it—is particularly pertinent, because that case is a challenge to EPA's Framework Rule for risk evaluations under TSCA. As Industry Petitioners explained in their opening brief, in the Methylene Chloride Rule EPA used certain interpretations and methods that it then incorporated into the Framework Rule even though the Framework Rule had not been published yet. Proof Br. 26 & n.6. Consequently, there are important statutory questions presented in common in both this case and in *United Steel*. EPA has characterized *United Steel* as "related" to this case, and suggested the Court should read EPA's briefs from *United Steel* in regard to certain arguments made by the American Chemistry Council in its role here as intervenor supporting EPA. EPA's Supplemental Authority, Doc. 173.

19. East Fork Enterprises and Epic Paint are not participants in the *United Steel* case. They presented their claims to this Court, as they were entitled to do. "Only in rare circumstances will a litigant in one cause be compelled to stand aside

while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255.

20. Finally, EPA suggests that it "could take action that may obviate the need for judicial resolution of some or all of the disputed issues." Abeyance Mot. ¶ 8. "Could" is a mere hypothetical, without a hint that EPA actually intends to take any pertinent action. Regardless, even a complete reversal by EPA, a decision to revoke the Methylene Chloride Rule, would not obviate the need for judicial resolution. Industry has had compliance obligations since July 2024, including particularly stringent workplace exposure limits that Industry Petitioners maintain are unjustifiable. A rescission or revocation of the Rule would not change the fact that the Rule has been in force. A company that has had compliance errors is exposed to potential penalties of nearly $50,000 per violation. 15 U.S.C. § 2615(a); 40 C.F.R. § 19.4 (listing adjustments for inflation). A company with current compliance problems can be subject to private actions—brought by private parties, not by the government—in which it would have to pay the attorney fees if it loses. 15 U.S.C. § 2619(a), (c)(2).

21. Industry Petitioners do not concede, of course, that they or any other particular company has violated the Rule as it stands. But EPA itself said, in the Rule, that there is a risk of "significant and widespread implementation difficulties" for the stringent exposure limits it imposed, 89 Fed. Reg. at 39,292—exposure limits

that are, it bears repeating, already in force and continue in force while EPA enjoys its abeyance.

22. Thus, EPA's internal review of the Rule cannot end the risk to Industry Petitioners and to the members of the American Chemistry Council. Only the relief they requested from this Court can do that. EPA's suggestion that it could "obviate the need for judicial resolution" is incorrect.

23. In the *United Steel* case, certain petitioners pointed out that various statutory interpretation questions presented in that case were "adopted in the 2016 TSCA amendments, are almost a decade old and have not yet been authoritatively construed by any court"; and that following *Loper Bright* "it is the responsibility of *this Court* to determine what TSCA requires." Labor Petitioners' Opposition, Doc. 2099993, p.6, No. 24-1151 (D.C. Cir. Feb. 11, 2025) (emphasis in original). Some of those questions are presented in this case as well, including the issue whether EPA can or should assess risk for a chemical substance as a whole. *Id.*; *cf.* Proof Br. 22-29. Just as the D.C. Circuit refused to delay its adjudication, this Court should proceed to address the serious challenges that Industry Petitioners have presented.

24. EPA indicates it will file an opposition to this motion. The Sierra Club reserves the right to file a response upon seeing this motion. All other parties are joined in this motion.

For these reasons, the Court should review the order by which a single judge granted EPA's Abeyance Motion without an opportunity for opposition; should lift the abeyance; and should order the case to continue in the ordinary course, in which the next expected activity would be the scheduling of oral argument.

February 20, 2025

Respectfully submitted,

*/s/ Keith Bradley*
KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

KATHERINE WENNER
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
2550 M Street, NW
Washington, D.C. 20037
(202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

DAVID CHUNG
AMANDA SHAFER BERMAN
WARREN LEHRENBAUM
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004-2595
(202) 624-2587
dchung@crowell.com

CROWELL & MORING, LLP

*Counsel for American Chemistry Council*

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,394 words, as determined by the word-count function of Microsoft Office 365.

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman Font.

*/s/ Keith Bradley*
Keith Bradley

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*