**No. 24-60227**

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

East Fork Enterprises, Incorporated; Epic Paint Company,

*Petitioners*

v.

United States Environmental Protection Agency;
Lee Zeldin, Administrator, United States Environmental Protection Agency,

*Respondents*

# PETITIONERS' MOTION TO EXPEDITE ISSUANCE OF THE MANDATE

W. CAFFEY NORMAN
3135 O Street, NW
Washington, D.C. 20007
Tel: (202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
Tel.: (303) 830-1776
Fax: (303) 894-9239
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

SQUIRE PATTON BOGGS (US) LLP

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

Respondent EPA prohibited manufacture, distribution, or use of methylene chloride across the vast majority of the markets in which it was in use. With three exceptions, those prohibitions came into full effect on April 28, 2026.[1] *Methylene Chloride; Regulation Under the Toxic Substances Control Act (TSCA)*, 89 Fed. Reg. 39254 (May 8, 2024) (the "Rule"). The Court has now held this rule invalid, and due to be vacated, for multiple reasons, including that EPA's scientific assessment was arbitrary and capricious; its regulation exceeded what is statutorily permitted; and it did not, before banning methylene chloride, adequately consider whether practicable alternatives are available for the various uses where methylene chloride is needed. None of that holding provides any relief yet, because the Court's mandate will not issue for a month and a half. East Fork Enterprises and Epic Paint Co. ("East Fork Petitioners") ask the Court to relieve them from the unlawful ban on methylene chloride immediately, and thereby allow them to resume the economic activities that EPA shut down. In more detail:

1. This case was a petition for review of EPA's rule entitled "Methylene Chloride; Regulation under the Toxic Substances Control Act (TSCA)," published on May 8, 2024. 89 Fed. Reg. 39,254, as well as EPA's risk determination underlying the Rule (the "Risk Determination"). East Fork Enterprises and Epic

[1] Bans on use of the chemical in furniture refinishing take effect in 2029; for aerospace adhesive and sealants, in 2029; and for NASA emergencies, in 2034. 89 Fed. Reg. 39,301.

Paint filed their petition on June 20, 2024. Petitions from the Sierra Club and American Chemistry Council were eventually consolidated into this docket. No. 24-60256, Doc. 13 (order from Judicial Panel on Multidistrict Litigation consolidating Sierra Club petition).

2. The Risk Determination stated that methylene chloride presents unreasonable risks to human health. The Rule then prohibited manufacturing of methylene chloride, after May 2025, except for a few specified uses; prohibited sales of the chemical after January 2026 except for those uses; and prohibited use of the substance after April 28, 206, except for those few specified purposes. For the few narrow uses that remain permissible–such as "paint and coating removal from safety-critical, corrosion-sensitive components of aircraft and spacecraft," use is constrained by stringent exposure limits (no more than 2 parts per million ("ppm") averaged over 8 hours, and no more than 16 ppm averaged over any 15 minutes).

3. The Court heard oral argument on June 3, 2025.

4. On September 15, 2026, the Court granted East Fork Petitioners' petitions, because "[a]t every juncture of its scientific analysis, EPA has gone with the most extreme position . . . finding exaggerated unreasonable risk," resulting in a rule that "EPA cannot justify." Slip op. at 43-44. Consequently the Court ordered the Rule and the Risk Determination vacated. *Id.* at 44. Meanwhile, the Court

denied the petition from the Sierra Club arguing that EPA should have regulated even more broadly.

5. But the Rule is not vacated yet. "[T]his court's decisions are not final until [it] issue[s] a mandate"; until that time "the original . . . judgment remain[s] in effect." *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 467-68 (5th Cir. 2013) (last alteration in original). Under Rules 40 and 41 and this Court's operating procedure under 5th Circuit Rule 41, the Court's mandate will not issue until November 7, 2026–*i.e.*, 45 days after the judgment, plus another 8 days.

6. The Court has authority to order immediate issuance of the mandate. *See* Fed. R. App. P. 41(b) ("The Court may shorten or extend the time by order."). East Fork Petitioners respectfully submit that this case warrants such an expedited mandate.

7. As the Court recognized, EPA "failed to adequately consider profound economic consequences of its regulation," and did not recognize the "limited availability of alternatives that are economically and technically feasible." Slip op. at 44. East Fork Petitioners described a few of the industries that are hamstrung by EPA's ban. For example, refinishing and remanufacturing of automotive parts; powder-coating of metal parts; paint stripping; cleaning of brake pads; and more, have relied on methylene chloride. Br. 64-66. All these economic activities remain impaired, because the Rule, with its prohibitions, remains in force.

8. EPA estimated the economic cost of the Rule is an annualized $36 million per year for 20 years. 89 Fed. Reg. 39,256. If that estimate were correct, the time while the nation awaits issuance of the mandate would generate an additional, and unnecessary, $5 million in losses. Those losses cannot be recovered by any of the companies suffering them. Indeed "[t]he nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm," *Comput. & Commc'ns Indus. Ass'n v. Paxton*, 184 F.4th 420, 431 (5th Cir. 2026), such that an injunction would be warranted given the merits of this case. Immediate issuance of the mandate is a much more modest intervention, warranted after industry has suffered EPA's unlawful regulation for two years.

9. Moreover, EPA's cost figure is a significant underestimate. As the Court realized, EPA "did not account for much higher costs and lower productivity, in addition to adverse environmental consequences, associated with the adoption of alternatives" to methylene chloride. Slip op. at 36. Just one company that makes paint strippers explained, in the record, that because it can no longer use recycled methylene chloride from pharmaceutical manufacturing, the material that it can no longer purchase has to be incinerated at a cost of $11 million to $15 million per year. Br. 64 (citing RE-588).

10. While the Rule continues to impose its substantial costs across the economy, petitioners East Fork Enterprises and Epic Paint Company are

experiencing those costs in real time. These two companies are small businesses that used to manufacture products with methylene chloride as a key ingredient, including paint strippers. Br. 1-2. These products were mainstays of their product lines, and these petitioners still cannot lawfully make or sell their former products. The losses are mounting. Petitioners are grateful that the Court is justly invalidating EPA's unlawful and irrational Rule. But at present, they have 50 days to wait before they can actually resume lawful sales.

11. Furthermore, the Rule is impacting the business outside the United States of many companies that manufacture methylene chloride. The Mexican Secretaria de Medio Ambiente y Recursos Naturales has denied several applications for the importation into Mexico from the United States, on the basis that the use of methylene chloride is not permitted in the United States. It is understood that these denials only affect methylene chloride being exported from the United States, leaving the Mexican market open to manufacturers exporting from China and other countries. Expedited issuance of the mandate would remove the basis for this discriminatory treatment by the Mexican authorities.

12. Courts have regularly expedited their mandates to prevent the continued aggregation of economic harm. For example, in the case challenging broad-based tariffs, the Federal Circuit granted a motion for immediate issuance of its mandate, over the government's objection, after the plaintiffs pointed out that

"every day they are forced to operate without [refunds] inflicts harm on their businesses." Mot. for Immediate Issuance of the Mandate, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812, Doc. 169, p.5 (Fed. Cir. Feb. 24, 2026); Order, Doc. 173 (Fed. Cir. Mar. 2, 2026) (granting immediate issuance). That circuit also granted an immediate issuance in a private litigation where "monetary harm to Astellas continues to accrue while the parties wait for the mandate to issue." Appellant's Mot. to Expedite the Mandate, *Astellas Pharma., Inc. v. Sandoz Inc.*, No. 23-2032, Doc. 93, p.4 (Fed. Cir. Sept. 30, 2024); Order, Doc. 94 (Fed. Cir. Oct. 1, 2024) (granting immediate issuance). In a case challenging the Federal Energy Regulatory Commission's approval of an electric capacity auction, the Third Circuit granted such a motion, in light of the movants' observation that auctions held before the issuance of the mandate would use "revised clearing prices established in violation of [the doctrines that the court had enforce]," and participants would not receive a remedy for those wrong prices. Pet'rs Mot. for Immediate or Expedited Issuance of the Mandate, *PJM Power Providers Grp. v. FERC*, No. 23-1778, Doc. 122, p.5 (3d Cir. Mar. 21, 2024); Order, Doc. 129 (3d Cir. Mar. 28, 2024) (granting immediate issuance).

13. No countervailing considerations weigh against a swift issuance of the mandate. The purpose ordinarily served by the delay is to allow the preparation of a rehearing petition, if any. But there is no basis for rehearing in this case. The

panel's unanimous opinion thoroughly recounted the relevant aspects of the administrative record. It relied on pertinent authorities from this Circuit and from other circuits, and the Court's opinion did not conflict with any decision from this Court or any other circuit or the Supreme Court. Regardless, in the unlikely event that EPA seeks and the Court grants rehearing, the Court could then recall the mandate. *Cf. Janvey v. GMAG, LLC*, 113 F.4th 505, 507 (5th Cir. 2024) (recalling the mandate in order to rule on a petition for rehearing).

14. The Sierra Club will not be prejudiced by immediate of the mandate, for the same reasons that EPA will not. Furthermore, although the Court addressed the Sierra Club's petition in the same opinion as it did East Fork Petitioners', the Sierra Club is not actually a party to East Fork Petitioners' cases. The Sierra Club's petition remains a different case. "[C]onsolidation 'operates as a mere carrying on together of two separate suits . . . and 'does not avoid the necessity of separate decrees in each case.'" *Hall v. Hall*, 584 U.S. 59, 71 (2018) (citation omitted). Consequently, the Court can issue the mandate immediately for East Fork Petitioners without affecting the timeline for issuance on the Sierra Club's petition.

15. EPA reserves its position on the request to expedite the mandate. American Chemistry Council takes no position. The Sierra Club opposes this motion, and reserves the right to file a response. East Fork Petitioners note, though, that the Sierra Club is not a party to their case.

For these reasons, East Fork Petitioners move the Court to issue the mandate in their case immediately.

September 22, 2026

Respectfully submitted,

*/s/ Keith Bradley*

KEITH BRADLEY
KAYLA MARIE MENDEZ
717 17th Street, Suite 1825
Denver, CO 80202
(303) 830-1776
keith.bradley@squirepb.com

SAMUEL B. BALLINGRUD
2550 M Street, NW
Washington, DC 20037

SQUIRE PATTON BOGGS (US) LLP

W. CAFFEY NORMAN
3135 O Street, NW
Washington, D.C. 20037
(202) 460-9495
caffeynorman@outlook.com

NORMAN LAW & POLICY PLLC

*Counsel for East Fork Enterprises, Inc. and Epic Paint Company*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 1,671 words, as determined by the word-count function of Microsoft Office 365.

This document further complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman Font.

*/s/ Keith Bradley*
KEITH BRADLEY
*Counsel for East Fork Enterprises, Inc.*
*and Epic Paint Company*